Jason N.W. Plowman [18818]
Paul J. Hulbert [19153]
OGLETREE, DEAKINS, NASH,
    SMOAK & STEWART, P.C.
15 W. South Temple, Suite 950
Salt Lake City, UT 84101
Telephone: 801.658.6100
Facsimile:  385.360.1707
jason.plowman@ogletree.com
paul.hulbert@ogletree.com

*Attorneys for Defendant Kelle's Transport Service, LLC
d/b/a SOAR Transportation Group*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JAMES BRACEY, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br>v.<br><br>KELLE'S TRANSPORT SERVICE, LLC d/b/a SOAR TRANSPORTATION GROUP,<br><br>        Defendant. | **DEFENDANT'S PARTIAL MOTION TO DISMISS**<br><br>**(Oral Argument Requested)**<br><br>Case No. 2:25-cv-00160-JCB<br>Magistrate Judge Jared C. Bennett |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Kelle's

Transport Service, LLC d/b/a SOAR Transportation Group ("SOAR") moves to dismiss Count I

(Truth-In-Leasing claim) and Count II (Utah Consumer Sales Practices Act claim) of Plaintiff

James Bracey's Proposed Class Action Complaint with prejudice.[1]

---

[1] Pursuant to Fed. R. Civ. P. 12(a)(4)(A), if "the court denies the motion or postpones its disposition until trial," Defendant will file its Answer to the surviving count(s) in the Complaint "within 14 days after notice of the court's action" – unless the Court sets a different time. The filing of a partial motion to dismiss for failure to state a claim extends the applicable time for serving

## INTRODUCTION

Counts I and II of Plaintiff's Complaint hinge on a single underlying allegation: that SOAR operates term-leased trucks through owner-operator drivers without written lease agreements. Plaintiff claims that by operating without lease agreements, SOAR violated the Truth-in-Leasing regulations of 49 C.F.R. Part 376 ("TIL Regulations") (Count I) and the Utah Consumer Sales Practices Act ("UCSPA") (Count II). Fatal to both claims, SOAR maintains detailed written lease agreements with its drivers. Plaintiff is aware of the written agreement and its provisions – he signed and dated his Independent Contractor Operating Agreement a half-dozen times on December 14, 2023 and worked with SOAR under the agreement. The plain language of the agreement directly contradicts Plaintiff's allegations in Counts I and II and, therefore, Plaintiff fails to state a facially plausible claim. Further, Plaintiff did not plead facts sufficient to satisfy any of the exceptions that would allow him to recover damages under the UCSPA. For these reasons, as set forth in detail below, Counts I and II should be dismissed for failure to state a claim.

---

responsive pleadings to unchallenged claims. *See, e.g.*, *Amann v. Office of Utah Attorney General*, No. 2:18-cv-00341, 2021 WL 6125826, at *1 (D. Utah Dec. 28, 2021) (noting that defendant filed a partial motion to dismiss and then filed an answer to the remaining claims *after* the court ruled on the motion); *Strobel v. Rusch*, No. CIV 18-0656 RB/JFR, 2020 WL 3893071, at *2-3 (D.N.M. July 10, 2020) ("the Court sides with the majority of district courts" and tolls deadline to respond to Complaint pending partial motion to dismiss); *Kachadoorian v. United Airlines, Inc*., No. 18-cv-01205-RBJ, 2019 WL 1953399, at *4, n.3 (D. Colo. May 2, 2019) (responsive pleading is not due until after ruling on partial motion to dismiss); 2 Moore's Federal Practice - Civil § 12.12 (2025) ("Serving any motion, even one that addresses only a few of the counts or claims in a pleading, is sufficient to postpone the time to answer the entire pleading.").

## RELEVANT FACTS

### I.    Plaintiff Was an Independent Contractor Driver for SOAR.

SOAR is a motor carrier and broker in interstate trucking. Complaint, ¶¶ 22–24. For the motor carrier side of its business, SOAR operates trucks through independent contractor drivers. Complaint, ¶ 34 ("Defendant . . . term leases its truck tractors from its independent contractor drivers.").[2] Plaintiff worked as an independent contractor driver for SOAR from December 2023 through August 2024. *Id.* at ¶¶ 6, 26, 32–34.

### II.    An ICOA Governed Plaintiff's Relationship With SOAR.

Plaintiff's Complaint references an independent contractor operating agreement ("ICOA"), either by name or other labels (*i.e.*, "written lease agreement," "written lease," "lease," or "term lease arrangement"), in nearly a dozen different paragraphs in his Complaint. *See* Complaint at ¶¶ 35, 38–39, 42, 47, 49, 130, 133, 142, 155, 161. Most of those allegations relate to the purported non-existence of the ICOA. *See id.* However, the ICOA did exist, and it contained extensive information about Plaintiff and SOAR's relationship.

#### A.    Plaintiff Signed His ICOA Six Times.

Plaintiff signed his ICOA on December 14, 2023. *See* Exhibit A ("ICOA") to Declaration of Brayden Peroceschi ("Peroceschi Decl."), p. 14.[3] Brayden Peroceschi countersigned on behalf of SOAR. *Id.* As part of the ICOA, there were also Appendixes A–D, ICOA Fuel Surcharge

---

[2] For purposes of analyzing Counts I and II, Defendant relies on Plaintiff's independent contractor allegations.

[3] By frequently referencing the allegedly non-existent ICOA, and centering his Complaint on the ICOA's purported non-existence, Plaintiff clearly incorporates the ICOA into his Complaint. *See infra* Law and Argument section. Therefore, the Court should consider the ICOA in evaluating Defendant's Motion to Dismiss. *Id.*

Schedule, ICOA Receipt for Possession of Equipment, and ICOA Deduction Schedule. Plaintiff also signed five of those documents, for a total of six signatures. *See* ICOA, pp. 14, A-9, B-1, C-1, PDF p. 16, PDF p. 30.

**B.    The ICOA Expressly Provides Plaintiff's Compensation Formulas.**

Under the ICOA, Plaintiff's compensation included both base compensation and a fuel surcharge. *See* ICOA, pp. 1, A-1. Plaintiff's base compensation was based on the number of miles he drove in his truck, using different rates depending on whether they were "loaded" miles (*i.e.*, hauling freight) or "unloaded" miles (*i.e.*, not hauling). *See* ICOA, p. A-1. As stated in the ICOA, "Carrier shall pay Contractor $1.40 per **loaded** mile for all **loaded** (practical) miles," and "$0.50 per **unloaded** (deadhead) mile for all **unloaded** (deadhead) (practical) miles[.]" *Id.* (emphasis in original). Fuel surcharge compensation, meanwhile, was only based on "loaded" miles: "Carrier shall pay Contractor fuel-related compensation on **loaded** (practical) miles[.]" *Id.* (emphasis in original). The ICOA further states:

> Carrier shall pay Contractor fuel-related compensation on <u>loaded</u> (practical) miles (zip code to zip code) operated under and pursuant to Carrier dispatch (as specifically directed or authorized by Carrier) pursuant to this Agreement (each, a "Loaded Mile") according to the following formula (the "Fuel Compensation Formula"): . . . Payment to Contractor per Loaded Mile = [(Weekly DOE average price/gallon) - $1.25] / 7

ICOA, PDF p. 26 (emphasis in original).

**C.    The ICOA Provides Detailed Descriptions of Pay Deductions.**

There are various overhead expenses involved with hauling freight by truck, including fuel taxes, insurance premiums, permit costs, and others. One way of handling these costs is for a carrier to pay these expenses upfront and later recover them from the driver's compensation. If a carrier and driver choose that option, TIL Regulations require their lease agreement to "clearly specify all

items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed." 49 C.F.R. § 376.12(h); *see also* Complaint, ¶ 31.

The ICOA discusses deductions in detail. For each cost, Plaintiff had the choice to pay the cost directly (*i.e.*, calculate and pay fuel and mileage taxes, furnish his own equipment, obtain and pay for the necessary permits, etc.) or elect for SOAR to front the cost and later deduct the amount from Plaintiff's pay. *See* ICOA, pp. A-1 – A-8. Plaintiff chose the deduction option for each cost, as reflected in ICOA Appendix A. *Id.* That election is also reflected in the ICOA Deduction Schedule, which provides a list of each potential deduction, its method of calculation, and whether Plaintiff elected the deduction. *See* ICOA, PDF p. 30.

### D.    The ICOA Allows SOAR to Amend Through Negative Consent.

Paragraph 5.3 of the ICOA outlines the process for amending deductions:

Carrier will notify Contractor in writing of a change to the amount of any item listed or referenced in the Deductions Table. Contractor will not be subject to that change until 7 days after the notice— or, if sooner, the time the third-party vendor has allowed—unless Contractor signs an addendum consenting to the change, in which case the change described in the addendum will go into effect immediately upon signing. **Otherwise, Contractor's failure to object to the change constitutes Contractor's consent to the change effective as of the date specified in the notice.** If Contractor notifies Carrier of Contractor's objection within that period and Contractor and Carrier are unable to resolve the matter to their mutual satisfaction, either party will have the right to terminate this Agreement immediately upon the change becoming effective.

*See* ICOA, p. 2 (emphasis in original).

### E.    SOAR Provided a Certificate of Insurance to Plaintiff.

Plaintiff could choose whether to obtain his trucking insurance through SOAR or to obtain insurance directly from the insurers. *Id.* at p. 4 ("[Plaintiff] <u>may</u> authorize [SOAR] to facilitate, on [Plaintiff]'s behalf, the insurance coverages listed in Appendix A.") (emphasis added). Plaintiff chose to obtain his insurance through SOAR. *Id.* at pp. A-6 – A-9. Based on that election, the ICOA required SOAR to provide Plaintiff a "certificate of insurance from [SOAR] and/or the insurance broker meeting the requirements of 49 C.F.R. § 376.12(j)(2) for each facilitated policy," and to "provide [Plaintiff] with a copy of each such policy upon request." *Id.* at p. 4. SOAR provided Plaintiff his Certificate of Insurance ("COI") on December 15, 2025. *See* Peroceschi Decl., ¶¶ 15–19; Exhibit B to Peroceschi Decl.[4] That COI contains the insurer's name, the vehicle's cash value, policy numbers, effective dates, amounts and types of coverage, and the deductible amount. *See* Exhibit B to Peroceschi Decl. Further, the ICOA Deduction Schedule shows the cost of each insurance policy to Plaintiff. *See* ICOA, PDF p. 30.

### F.    The ICOA Expressly Addresses Escrow Fund Procedures.

TIL Regulations include provisions governing the use of escrow accounts. *See* Complaint, ¶ 57. In particular, TIL Regulations require a lease to "specify" various terms of the escrow arrangement, such as the "amount of any escrow fund or performance bond required to be paid by the lessor"; the "specific items to which the escrow fund can be applied"; that the "the carrier shall pay interest on the escrow fund on at least a quarterly basis,"; the "conditions the lessor must fulfill

---

[4] By centering certain allegations on the COI, Plaintiff clearly incorporates the COI into his Complaint. *See infra* Law and Argument section. Therefore, the Court should consider the COI in evaluating Defendant's Motion to Dismiss. *Id.*

in order to have the escrow fund returned," including that the escrow fund must "be returned [no] later than 45 days from the date of termination"; and related details. 49 CFR § 376.12(k).

The ICOA provides the requisite details about the escrow fund set up by the ICOA, called the "Operating Escrow Fund." *See* ICOA, pp. 4–5. Those details include the following, among others:

- Escrow payments required by SOAR: $0.08 "a mile." *Id.* at PDF p. 30 (capitalization modified); *see also id.* at p. A-5 (".08 cents per mile").

- Items to which the escrow fund can be applied: "The items to which the Operating Escrow Fund will apply are all charge-back items and deductions set forth in the Deductions Table." *Id.* at p. 4; *see also id.* at PDF p. 30 (providing itemized list and cost of each elected deduction).

- Escrow interest: "Carrier will pay interest on the balance in the Operating Escrow Fund on at least a quarterly basis[.]" *Id.* at p. 5.

- Returning escrow funds: "In no event will the balance in the Operating Escrow Fund (less any final deductions) be returned to Contractor later than 45 days from the date of termination of this Agreement." *Id.*

### G. The ICOA Describes Fuel Tax Payment Procedures.

Like with other overhead costs, Plaintiff elected for SOAR to pay Plaintiff's fuel and mileage taxes upfront and then recover the cost later from Plaintiff's compensation. *Id.* at pp. A-1 – A-6. Rather than using a separate fuel tax-specific escrow to pay for Plaintiff's fuel taxes, the ICOA indicates that SOAR recovers the cost through a non-refundable flat charge of "$0.0125 cents per mile, comprising the permit fees and Carrier's tax reporting admin. fee." *See id.* at p. A-4 (emphasis added); *see also id.* at PDF p. 30 (stating in the ICOA Deduction Schedule that the fuel and mileage tax would be based on $0.0125 "a mile") (capitalization modified).

III.   **Plaintiff Claims Defendant Violated TIL Regulations and the Utah Consumer Sales Practices Act on the Grounds that the ICOA Does Not Exist.**

A.   **Plaintiff Alleges SOAR Violated TIL Regulations by Operating Without Leases.**

According to Plaintiff's Complaint, "[SOAR] has violated the Truth-in-Leasing regulations . . . by failing to disclose required information in a written lease agreement, by taking undisclosed deductions from drivers' compensation, and by unlawfully retaining drivers' escrow funds." Complaint, ¶ 161.

The alleged undisclosed "required information" was "that the fuel surcharge paid to drivers will be calculated based only on loaded miles . . . even though [SOAR] makes drivers responsible for paying for fuel for both loaded and dispatched empty miles." *Id.* at ¶ 35.

The "undisclosed deductions" violated the TIL Regulations, Plaintiff claims, because the deduction amounts and methods of calculation were not disclosed in a "written lease agreement." *Id.* at ¶¶ 38–39, 161. While Plaintiff asserts this allegation generally, he also alleges two specific "example[s]." *Id.* at ¶¶ 40, 48. First, that SOAR amended the ICOA[5] through a negative consent process, which Plaintiff claims violates the TIL Regulations because they require the "written lease to be 'signed by these parties.'" *Id.* at ¶¶ 40–42 (quoting 49 C.F.R. § 376.12(a)). Second, that SOAR "charge[d] drivers amounts for insurance that are not disclosed in a written lease agreement" and failed to provide Plaintiff a "certificate of insurance that included all of the information required by 49 C.F.R. § 376.12(j)." *Id.* at ¶¶ 47–50.

---

[5] While Plaintiff repeatedly alleges there was no ICOA, Plaintiff seemingly recognizes there was an ICOA when he claims that the "purported amendment to the ICOA violate[d] the TIL regulations[.]" Complaint, ¶ 42. It is unclear how there could be an improper amendment to an ICOA that allegedly did not exist.

Finally, Plaintiff alleges SOAR violated the TIL Regulations regarding escrow funds in three specific ways. *Id.* at ¶¶ 57–64. First, that SOAR "does not return amounts deducted for the escrow fund to drivers after termination." *Id.* at ¶ 58. Second, that the escrow funds "do not properly accrue interest." *Id.* And third, that SOAR "places unlawful conditions on the return of escrow funds, by treating both escrow funds as 'catchall' funds from which [SOAR] makes withdrawals for improper and undisclosed purposes." *Id.* at ¶ 59. Plaintiff alleges, as examples, instances where SOAR withdrew from Plaintiff's escrow fund to pay for insurance, taxes, and "and other recurring deductions." *Id.* at ¶¶ 60–64.

### B.    Plaintiff Claims SOAR Violated the UCSPA by Operating Without Leases.

Plaintiff claims SOAR violated the UCSPA by "knowingly and intentionally charging drivers for consumer transactions that they did not agree to" and "engaging in unconscionable acts and practices." *Id.* at ¶¶ 69, 74. Plaintiff alleges only one instance of charging an unagreed-upon deduction: "the deduction of the trailing equipment rental fee." *Id.* at ¶ 72.

Plaintiff claims two instances of "unconscionable acts and practices." *Id.* at ¶¶ 74–84. First, Plaintiff alleges that "Defendant does not disclose at any point during the recruitment process that the fuel surcharge will be calculated based only on loaded miles, not dispatched empty miles[.]" *Id.* at ¶ 76. Second, Plaintiff claims that "until they start driving for Defendant and start receiving 'Fuel Breakdown' emails from Defendant," SOAR does not disclose that the maintenance escrow deductions and fuel tax deductions "include dispatched empty miles." *Id.* at ¶¶ 78–79.

## LAW AND ARGUMENT

**I.      To Survive a Motion to Dismiss, Plaintiff's Claims Must Be Plausible, Both Under the Complaint and Any Incorporated Documents.**

To survive a Rule 12(b)(6) motion to dismiss, a Complaint must contain allegations of fact that, if accepted as true, "state a claim to relief that is plausible on its face." *E.g.*, *Mundt v. Gadziala*, No. 24-1041, 2024 U.S. App. LEXIS 31539, at *10 (10th Cir. Dec. 12, 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (cleaned up). "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104–05 (10th Cir. 2017) (cleaned up). While it does not require a plaintiff to establish probability, the "plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663–64. Legal conclusions are not entitled to the assumption of truth. *Id.* at 678.

While courts generally only consider the face of the complaint when deciding a Rule 12(b)(6) motion, "courts may also consider documents that a plaintiff (1) attaches to [his] complaint; (2) incorporates by reference in [his] complaint; or (3) refers to in [his] complaint and that are central to [his] complaint and indisputably authentic." *E.g.*, *Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024). "Factual allegations that contradict a properly considered document are not well-pleaded facts that the court must accept as true." *Farrell-Cooper Mining Co. v. United States DOI*, 728 F.3d 1229, 1237 n.6 (10th Cir. 2013) (quoting *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1385 (10th Cir. 1997)); *Clinton v. Sec. Ben. Life Ins. Co.*, 63 F.4th 1264,

1275 (10th Cir. 2023) (a court "need not accept . . . allegations plainly contradicted by properly considered documents or exhibits").

"[I]f there is a conflict between the allegations in the complaint and the content of the attached exhibit, the exhibit controls." *Brokers' Choice*, 861 F.3d at 1105 (quoting *Droppleman v. Horsley*, 372 F.2d 249, 250 (10th Cir. 1967)) (cleaned up); *see also Mundt*, 2024 U.S. App. LEXIS 31539, at *13 (quoting the court in *Brokers*); *Bell v. Magna Times, LLC*, No. 2:18CV497DAK, 2019 U.S. Dist. LEXIS 72750, at *9 (D. Utah Apr. 29, 2019) (same). This rule generally applies to documents that "qualif[y] as a written instrument, which is a legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate." *Mundt*, 2024 U.S. App. LEXIS 31539, at *13 (cleaned up; emphasis added); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). It also applies "in situations where a party may misconstrue or attempt to characterize terms in a document when making allegations regarding the document in its Complaint." *Owners Ins. Co. v. Dockstader*, No. 2:18CV173DAK, 2018 U.S. Dist. LEXIS 147286, at *7 (D. Utah Aug. 28, 2018); *see also Clinton*, 63 F.4th at 1292 ("[W]hen the complaint describes the contents of a document, a court must reject an allegation that misstates the contents.") (Hartz, J., dissenting); *Joshua Colby Council v. Salt Lake City Police Dep't*, No. 2:24-cv-174 DBB DBP, 2025 U.S. Dist. LEXIS 26599, at *6–*9. (D. Utah Jan. 22, 2025) (where a plaintiff had claimed he was "kidnapped by rogue actors" and not "placed under arrest," the court considered a County Booking Packet in granting a defendant's motion to dismiss).

In *Hall v. Associated International Insurance Co.*, for example, the plaintiff asserted claims of fraud and promissory estoppel against a bank, based on insurance and mortgage documents. 494

F. App'x 902, 904 (10th Cir. 2012) (unpublished). Noting that the documents were central to the plaintiff's claims, the lower court found the documents "directly contradicted" the plaintiff's claims. *Id.* at 904–06. As a result of those contradictions (and other issues in the complaint), the lower court granted the defendant's motion to dismiss. *Id.* The Tenth Circuit affirmed. *Id.*

Similarly, in *Matney v. Barrick Gold of North America*, the plaintiffs claimed defendants breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 because, *inter alia*, the plan administrators charged excessively high fees. 80 F.4th 1136, 1142 (10th Cir. 2023). In their motion to dismiss, the defendants argued that the plaintiffs had misstated the plan documents' provisions. *Id.* The plaintiffs opposed, arguing it was improper to rely on the plan documents in a motion to dismiss. *Id.* The lower court granted the defendants' motion, and the Tenth Circuit affirmed. *Id.* at 1142–60. The Tenth Circuit found "[t]he district court did not err in refusing to accept as true factual allegations contradicted by these properly considered documents." *Id.* at 1160. Indeed, the plaintiffs could not "survive a motion to dismiss merely by pointing to allegations refuted by the documents on which those allegations are based." *Id.*

## II.     Plaintiff's Complaint Incorporates the ICOA and COI.

The Court should consider the ICOA and COI in deciding this Motion. The ICOA is central to Counts I and II of Plaintiff's Complaint. Plaintiff referred to the ICOA numerous times throughout his Complaint – including in at least eleven different paragraphs – and nearly every allegation directly relates to the alleged non-existence of the ICOA. *See* Complaint, ¶¶ 35, 38–39, 42, 47, 49, 130, 133, 142, 155, 161. Plaintiff's insurance-related allegations are similarly centered on the COI. *See id.* at ¶¶ 47–50. Rule 12(b)(6) does not require a court to ignore the document that is the central focus of a plaintiff's claims. *See*, *e.g.*, *Brokers' Choice*, 861 F.3d at 1105; *Matney*,

80 F.4th at 1142; *Hall,* 494 F. App'x at 904. Moreover, there can be no dispute regarding the authenticity of the ICOA or COI.[6] Peroceschi Decl., ¶¶ 14, 19. Given that Plaintiff referenced the ICOA numerous times in his Complaint, the ICOA and COI are central to his Complaint, and the ICOA and COI are indisputably authentic, the Court should consider the ICOA and COI in deciding this Motion.

## III.    Plaintiff Fails to Assert a Facially Plausible Claim Under TIL Regulations Because His Allegations Directly Conflict With the ICOA.

The ICOA's written terms directly contradict Plaintiff's allegations regarding the ICOA, and the Tenth Circuit has made it clear that the content of the ICOA controls here. *See*, *e.g.*, *Brokers' Choice*, 861 F.3d at 1105; *Matney*, 80 F.4th at 1142; *Hall,* 494 F. App'x at 904. As a result, Plaintiff fails to plead facts under Count I that allow this Court to draw a reasonable inference that SOAR is liable for the alleged conduct, and dismissing Count I is warranted.

### A.    Plaintiff Signed the ICOA.

While Plaintiff alleges he "was never provided with an executed version of an ICOA, nor does he remember being presented with or signing any ICOA," Plaintiff's signature is affixed to the ICOA no less than six times. *See* ICOA, pp. 14, A-9, B-1, C-1, PDF p. 16, PDF p. 30. He was provided the original, while SOAR maintained a copy. Peroceschi Decl., ¶¶ 9–10.

### B.    The ICOA Expressly Provides Plaintiff's Compensation Formulas.

Plaintiff alleges that SOAR did not disclose in a written lease agreement that the fuel surcharge would not be based on "dispatched empty miles." Complaint, ¶¶ 35–36, 74–77.

---

[6] The ICOA and COI submitted with this Motion are indisputably authentic copies, as one of the signatories – Brayden Peroceschi – has submitted a declaration authenticating the documents. *See Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, 825 F. Supp. 2d 1072, 1076 (D. Colo. 2011).

However, ICOA Appendix A explicitly stated that fuel surcharge compensation would only be based on "**loaded**" miles. ICOA, p. A-1. (emphasis in original). SOAR also provided a Fuel Surcharge Schedule with ICOA Appendix A, which provided that the surcharge compensation would be paid "per Loaded Mile." *Id.* at PDF p. 26. Given that the ICOA directly contradicts Plaintiff's allegations about the fuel surcharge, and the ICOA controls, Plaintiff's allegations about the fuel surcharge fail to state a claim. *See*, *e.g.*, *Brokers' Choice*, 861 F.3d at 1105; *Matney*, 80 F.4th at 1142; *Hall,* 494 F. App'x at 904.

### C. The ICOA Describes the Deductions from Plaintiff's Pay in Detail.

Plaintiff claims SOAR did not disclose in a lease agreement the amounts and formulas related to Plaintiff's pay deductions. Complaint, ¶¶ 38–39. But the ICOA provides a list of each potential deduction, its method of calculation, and whether Plaintiff elected for the deduction. *See* ICOA, pp. A-1 – A-8, PDF p. 30. Again, the ICOA controls over Plaintiff's conflicting allegations, and therefore Plaintiff's allegations about the deductions fail to state a claim. *See*, *e.g.*, *Brokers' Choice*, 861 F.3d at 1105; *Matney*, 80 F.4th at 1142; *Hall,* 494 F. App'x at 904.

### D. The ICOA Allows SOAR to Amend Through Negative Consent.

While Plaintiff alleges that SOAR improperly amended the ICOA through a negative consent process, the ICOA allows this precise amendment process. *See* Complaint, ¶¶ 40–42, 72–74; ICOA, pp. 2–3. The ICOA allows SOAR to "notify" Plaintiff of a change to a deduction, and then if there is no objection, that "failure . . . constitutes [Plaintiff's] consent to the change effective as of the date specified in the notice[.]" *See* ICOA, pp. 2–3. Nor does this process violate the provision in the TIL Regulations cited by Plaintiff that "[t]he lease shall be signed by [the] parties." *See* 49 C.F.R. § 376.12(a); Complaint, ¶¶ 40–42. The ICOA *was* signed by the parties. *See*, *e.g.*,

ICOA, p. 14. The ICOA controls over Plaintiff's conflicting allegations and, therefore, Plaintiff's conflicting allegations about the amendment process fail to state a claim. *See*, *e.g.*, *Brokers' Choice*, 861 F.3d at 1105; *Matney*, 80 F.4th at 1142; *Hall*, 494 F. App'x at 904.

### E.    SOAR Provided a COI to Plaintiff.

While Plaintiff claims SOAR did not disclose insurance deductions in a lease agreement, the ICOA shows Plaintiff's insurance deductions. *See* Complaint, ¶ 47; ICOA, pp. A-6 – A-8, PDF p. 30. And while Plaintiff claims SOAR did not provide him a COI with the required information, SOAR provided Plaintiff his COI on December 15, 2023. *See* Peroceschi Decl., ¶¶ 15–19; Exhibit B to Peroceschi Decl. That COI, moreover, lists the name of the insurer, the actual cash value of the vehicle, policy numbers, effective dates, amounts and types of coverage, and the amount of the deductible. *See* Exhibit B to Peroceschi Decl. Given that Plaintiff's allegations conflict with the ICOA and COI, which controls, Plaintiff's insurance allegations fail to state a claim. *See*, *e.g.*, *Brokers' Choice*, 861 F.3d at 1105; *Matney*, 80 F.4th at 1142; *Hall*, 494 F. App'x at 904.

### F.    The ICOA Describes the Escrow Fund's Procedures.

Plaintiff asserts three allegations regarding the escrow, and each fails to state a claim. First, Plaintiff alleges SOAR does not return escrow funds to driver post-termination. Complaint, ¶¶ 57–60. The ICOA, however, states the opposite: "In no event will the balance in the Operating Escrow Fund (less any final deductions) be returned to Contractor later than 45 days from the date of termination of this Agreement." *See* ICOA, p. 5. And while Plaintiff alleges that SOAR did not return his $1,016.65 in "fuel tax escrow" money after termination, the ICOA does not create a "fuel tax escrow." Rather, the ICOA states that SOAR "will deduct or otherwise recover a flat

charge of $0.0125 cents per mile[.]" *Id.* at A-4. This was not an escrow, but rather, a non-refundable charge to cover Plaintiff's fuel taxes.

Second, Plaintiff claims SOAR did not allow escrow funds to "properly accrue interest." *See* Complaint, at ¶¶ 57–60. The ICOA explicitly contradicts this claim. As the ICOA outlines, "[SOAR] will pay interest on the balance in the Operating Escrow Fund on at least a quarterly basis." ICOA, p. 5. Plaintiff, moreover, alleges he had a <u>negative</u> balance in December 21–27, 2023; May 16–22, 2024; July 4–10, 2024; and August 22–28, 2024. Complaint, ¶¶ 125–27, 129. He similarly alleges to having a negative escrow balance in his settlements from January 31, 2024; April 10, 2024; April 17, 2024; and July 31, 2024. *Id.* at ¶¶ 61–64. The ICOA does not state, and Plaintiff does not allege, that Plaintiff would be entitled to interest on his own debt to SOAR.

Third, Plaintiff alleges SOAR improperly used the Operating Escrow Fund as a "catchall" fund "for improper and undisclosed purposes." *Id.* at ¶¶ 57–60. The ICOA, however, states that SOAR could use the escrow funds for "all charge-back items and deductions set forth in the Deductions Table." *See* ICOA, p. 4. The ICOA Deductions Table, moreover, provides an itemized list of each deduction. *See id.* at PDF p. 30. Plaintiff elected to utilize the deduction process for each individual cost and agreed to the itemized list of those deductions. *See id.* at p. 4, PDF p. 30. Plaintiff does not allege facts supporting that SOAR violated that agreement. Nor does Plaintiff allege facts supporting that the TIL Regulations prohibit these ICOA provisions. Given all three of Plaintiff's allegations conflict with the ICOA, these allegations fail to state a claim. *See*, *e.g.*, *Brokers' Choice*, 861 F.3d at 1105; *Matney*, 80 F.4th at 1142; *Hall*, 494 F. App'x at 904.

In sum, each allegation that Plaintiff asserts to support his claim under the TIL Regulations directly conflicts with the plain language of the ICOA. Plaintiff's claim cannot survive "merely by

pointing to allegations refuted by the documents on which those allegations are based." *Matney*, 80 F.4th at 1160. Therefore, this Court should dismiss Count I of Plaintiff's Complaint.

## IV.    Plaintiff's UCSPA Claim Also Fails Because the ICOA Explicitly Addresses the Alleged Deductions and Fuel Surcharge Process.

In his Complaint, Plaintiff alleges SOAR violated the UCSPA in two distinct ways: (1) by "knowingly and intentionally charging drivers for consumer transactions that they did not agree to"; and (2) by "engaging in unconscionable acts and practices." Complaint, ¶¶ 69, 74. Plaintiff alleges one instance of the "knowingly and intentionally" violation and two instances of the "unconscionable acts and practices" violation. *Id.* at ¶¶ 72–79. The ICOA flatly contradicts each of the allegations supporting each purported UCSPA violation, and the ICOA controls. *See, e.g.*, *Brokers' Choice*, 861 F.3d at 1105; *Matney*, 80 F.4th at 1142; *Hall*, 494 F. App'x at 904. Therefore, Plaintiff's UCSPA claim should be dismissed.

### A.    Based on the Amendment Process Outlined by the ICOA, and Plaintiff's Allegations in the Complaint, Plaintiff Agreed to the Deduction of the Trailing Equipment Rental Fee.

The "knowingly and intentionally" allegation hinges on Plaintiff's claim that "drivers did not agree to the deduction of the trailing equipment rental fee." Complaint, ¶ 72. However, Plaintiff's other allegations indicate he did agree. Under the ICOA, SOAR could initiate an amendment by notifying Plaintiff "in writing of a change to the amount of any item listed or referenced in the Deductions Table." ICOA, p. 2–3. If Plaintiff does not object to the notification, then "[Plaintiff's] failure to object to the change constitutes [Plaintiff's] consent to the change effective as of the date specified in the notice." *Id.* Moreover, Plaintiff could simply terminate the ICOA if he objected and the parties could not agree. *Id.*

This procedure parallels Plaintiff's allegations about the amendment. Plaintiff alleges that "SOAR informed drivers that it would begin deducting from their settlements a trailer equipment rental fee" and that "[Plaintiff's] failure to object to this change shall constitute [Plaintiff's] consent to the change[.]" Complaint, ¶ 41. Then, starting on August 28, 2024, SOAR began deducting the trailer equipment rental fee. *Id.* Plaintiff does not allege that he objected to the notice, or that he unsuccessfully attempted to terminate the ICOA. Thus, applying Plaintiff's allegations to the ICOA's amendment procedure, Plaintiff agreed to the amendment. As Plaintiff's allegation that SOAR amended the ICOA without his consent is contradicted by the ICOA, and the ICOA controls, this allegation does not state a claim. *See*, *e.g.*, *Brokers' Choice*, 861 F.3d at 1105; *Matney*, 80 F.4th at 1142; *Hall,* 494 F. App'x at 904.

### B.    The ICOA Explicitly Discloses that the Fuel Surcharge Would Only Be Calculated On Loaded Miles.

Plaintiff's first "unconscionable acts and practices" allegation hinges on the claim that SOAR did "not disclose at any point during the recruitment process that the fuel surcharge will be calculated based only on loaded miles, not dispatched empty miles." Complaint*,* ¶ 76. Yet, the ICOA explicitly states that the surcharge would be based on loaded miles, even bolding and underlining the word "loaded" in the disclosure: "[SOAR] shall pay [Plaintiff] fuel-related compensation on **<u>loaded</u>** (practical) miles[.]" *See* ICOA, p. A-1 (emphasis in original). Nor was this stated only once in the ICOA. *See id.* at PDF p. 26. Plaintiff's conflicting allegations do not, therefore, state a claim under the UCSPA. *See*, *e.g.*, *Brokers' Choice*, 861 F.3d at 1105; *Matney*, 80 F.4th at 1142; *Hall,* 494 F. App'x at 904.

**C.    The ICOA Clearly States that the Maintenance Escrow Deductions and Fuel Tax Deductions Would Be Based on Both Loaded and Unloaded Miles.**

Plaintiff's second "unconscionable acts and practices" allegation is that SOAR does not disclose that the maintenance escrow deductions and fuel tax deductions "include dispatched empty miles" until after drivers "start driving for Defendant and start receiving 'Fuel Breakdown' emails from Defendant[.]" Complaint, ¶¶ 78–79. Yet, the ICOA provides that Plaintiff's escrow deduction would be $0.08 "a mile." ICOA, at PDF p. 30 (capitalization modified); *see also id.* at p. A-5 ("$.08 cents per mile"). And the ICOA similarly provides that Plaintiff's fuel and mileage tax deduction would be "a flat charge of $0.0125 cents <u>per mile</u>." *Id.* at p. A-4 (emphasis added); *see also id.* at PDF p. 30 (the fuel and mileage tax would be based on $0.0125 "a mile") (capitalization modified). The ICOA was clear that these two deductions would be based on every mile, irrespective of whether they were loaded or unloaded miles. Given that the ICOA contradicts this allegation, and the ICOA controls, this allegation fails to state a claim. *See*, *e.g.*, *Brokers' Choice*, 861 F.3d at 1105; *Matney*, 80 F.4th at 1142; *Hall,* 494 F. App'x at 904.

As each of Plaintiff's allegations under the UCSPA are inconsistent with the plain language of the ICOA, the UCSPA claim is facially implausible and should be dismissed. *See*, *e.g.*, *Brokers' Choice*, 861 F.3d at 1105; *Matney*, 80 F.4th at 1142; *Hall,* 494 F. App'x at 904.

**V.    Plaintiff's UCSPA Claim Also Fails Because Plaintiff Did Not Plead Facts Supporting a Class Action Damages Claim.**

**A.    The UCSPA Does Not Authorize Recovery of Damages in a Class Action Unless Certain Criteria Are Met.**

Under the UCSPA, "A consumer who suffers loss as a result of a violation of this chapter may recover, <u>but not in a class action</u>, actual damages or $2,000, whichever is greater, plus court costs." Utah Code § 13-11-19(2) (emphasis added). However, a consumer "may bring a class

19

action for the actual damages caused by an act or practice" under any of the following circumstances:

> (1) the act or practice is "specified as violating this chapter by a rule adopted by the enforcing authority under Subsection 13-11-8(2) before the consumer transactions on which the action is based[;]"

> (2) the act or practice is "declared to violate Section 13-11-4 or 13-11-5 by a final judgment of the appropriate court or courts of general jurisdiction and appellate courts of this state that was either officially reported or made available for public dissemination under Subsection 13-11-7(1)(c) by the enforcing authority 10 days before the consumer transactions on which the action is based[;] or"

> (3) the act or practice is "with respect to a supplier who agreed to it, was prohibited specifically by the terms of a consent judgment which became final before the consumer transactions on which the action is based."

§ 13-11-19(4)(a). "Unless one of the three situations is present, a consumer is not permitted to pursue a class action under the UCSPA for actual or statutory damages." *Matchett v. BSI Fin. Servs.*, No. 2:21-cv-211-DAK-CMR, 2021 U.S. Dist. LEXIS 149228, at *5 (D. Utah Aug. 6, 2021) (citing *Johnson v. Blendtec, Inc.*, 500 F. Supp. 3d 1271 (D. Utah 2020)).[7]

**B.    Plaintiff Fails to Allege Facts Supporting that Any of the Exceptions Under Utah Code § 13-11-19(4)(a) Apply.**

Plaintiff's Complaint fails to address any of the situations under § 13-11-19(4)(a). Indeed, he does not allege (nor can he in good faith) that any of SOAR's practices or acts (1) violate any rule promulgated by the Utah Division of Consumer Protection; (2) have previously been declared to violate the UCSPA by any court; or (3) have been prohibited by a consent judgment. Nor do Plaintiff's allegations allow for a reasonable inference that SOAR's conduct meets any of those

---

[7] Damages are not the only remedy available under the UCSPA. Even if a plaintiff is not entitled to recover damages, a plaintiff "may bring a class action for declaratory judgment, an injunction, and appropriate ancillary relief." § 13-11-19(3).

criteria. As a result, Plaintiff's Complaint fails to allege sufficient facts to support a class action claim for damages under § 13-11-19(2) and § 13-11-19(4)(a) (the "UCSPA damages provisions").

### C.    Dismissal of Damages Claim is Appropriate Because Plaintiff Fails to Allege the Substantive Requirements for Stating a UCSPA Class Claim for Damages.

When a plaintiff fails to allege facts that satisfy the requirements of the UCSPA, deciding the issue at the motion to dismiss stage is appropriate. *See Fullmer v. A-1 Collection Agency*, LLC, No. 4:20-cv-00143-DN-PK, 2022 U.S. Dist. LEXIS 88090, at *12 (D. Utah May 16, 2022) ("Because Plaintiffs' Complaint fails to sufficiently allege the substantive requirements for stating a class claim for damages under UCSPA subsection (4)(a), there is no reason to delay consideration of the lack of damages"); *Matchett*, 2021 U.S. Dist. LEXIS 149228, at *8 (dismissed Plaintiff's class action claims for damages under the UCSPA because Plaintiff failed to plead "statutory authorization for her class claims"); *Callegari v. Blendtec, Inc.*, No. 2:18-cv-308-DB, 2018 U.S. Dist. LEXIS 190746, at *11 (D. Utah Nov. 6, 2018) (dismissing the plaintiff's class action claim for damages under the UCSPA due to the plaintiff's "failure to plead 'an act or practice specified as violating [the UCSPA] by a rule adopted by the enforcing authority.'").

As Plaintiff did not plead facts sufficient to satisfy any of the exceptions under the UCSPA damages provisions, the Court should dismiss Plaintiff's class action UCSPA claim for damages.

## **CONCLUSION**

For the reasons set forth above, Defendant respectfully requests the Court grant its Motion and dismiss Counts I and II of Plaintiff's Proposed Class Action Complaint with prejudice.

DATED this 10th day of April, 2025.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.


*/s/ Jason N.W. Plowman*
Jason N.W. Plowman
Paul J. Hulbert
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 10th day of April, 2025, I served the foregoing **DEFENDANT'S PARTIAL MOTION TO DISMISS** on the persons identified below as indicated:

Kass Harstad
BIRCH HALLAM HARSTAD & JOHNSON LLC
1516 W Hays Street
Boise, ID 83702
kass@idahojobjustice.com
*Attorneys for Plaintiff and Proposed Class Counsel*

☐ U.S. Mail – Postage Prepaid
☐ Hand Delivery
☑ Electronic Filing
☐ Email

Hillary Schwab (*Pro Hac Vice* forthcoming)
Rachel Smit (*Pro Hac Vice*)
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
hillary@fairworklaw.com
rachel@fairworklaw.com
*Attorneys for Plaintiff and Proposed Class Counsel*

☐ U.S. Mail – Postage Prepaid
☐ Hand Delivery
☑ Electronic Filing
☐ Email

/s/ *Jason N.W. Plowman*

88945991.v15-OGLETREE