Jason N.W. Plowman [18818]
Paul J. Hulbert [19153]
OGLETREE, DEAKINS, NASH,
    SMOAK & STEWART, P.C.
15 W. South Temple, Suite 950
Salt Lake City, UT 84101
Telephone: 801.658.6100
Facsimile:  385.360.1707
jason.plowman@ogletree.com
paul.hulbert@ogletree.com

*Attorneys for Defendant Kelle's Transport Service, LLC
d/b/a SOAR Transportation Group*

---

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JAMES BRACEY, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br>v.<br><br>KELLE'S TRANSPORT SERVICE, LLC d/b/a SOAR TRANSPORTATION GROUP,<br><br>    Defendant. | **DEFENDANT'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**(Oral Argument Requested)**<br><br>Case No. 2:25-cv-00160-HCN-JCB<br>Judge Howard C. Nielson, Jr.<br>Magistrate Judge Jared C. Bennett |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Kelle's

Transport Service, LLC d/b/a SOAR Transportation Group ("SOAR") moves to dismiss Count I

(Truth-In-Leasing claim) and Count II (Utah Consumer Sales Practices Act claim) of Plaintiff

James Bracey's First Amended Class Action Complaint and Jury Demand ("Amended Complaint") with prejudice.[1]

## INTRODUCTION

Plaintiff originally claimed he provided services to SOAR without an independent contractor operating agreement ("ICOA"), in violation of the Truth-in-Leasing regulations of 49 C.F.R. Part 376 ("TIL Regulations") (Count I) and the Utah Consumer Sales Practices Act ("UCSPA") (Count II). In his Amended Complaint, he now admits there was an ICOA but argues – to no avail – it was defective.

He claims the ICOA did not disclose that the Operating Escrow and fuel tax charges would include empty miles, even though the ICOA did. He alleges the TIL Regulations prohibit the ICOA's negative consent process to change pay deductions, despite no such prohibition existing. He claims he did not know his physical damage insurance deduction would be $81.73 per week, but the ICOA Deduction Sheet – which he signed along with the rest of the ICOA documents – explicitly states that precise amount. He claims it was improper that he did not get back his

---

[1] Pursuant to Fed. R. Civ. P. 12(a)(4)(A), if "the court denies the motion or postpones its disposition until trial," SOAR will file its Answer to the surviving count(s) in the Amended Complaint "within 14 days after notice of the court's action" – unless the Court sets a different time. The filing of a partial motion to dismiss for failure to state a claim extends the applicable time for serving responsive pleadings to unchallenged claims. *See, e.g.*, *Amann v. Office of Utah Attorney General*, No. 2:18-cv-00341, 2021 WL 6125826, at *1 (D. Utah Dec. 28, 2021) (noting that defendant filed a partial motion to dismiss and then filed an answer to the remaining claims *after* the court ruled on the motion); *Strobel v. Rusch*, No. CIV 18-0656 RB/JFR, 2020 WL 3893071, at *2-3 (D.N.M. July 10, 2020) ("the Court sides with the majority of district courts" and tolls deadline to respond to Complaint pending partial motion to dismiss); *Kachadoorian v. United Airlines, Inc*., No. 18-cv-01205-RBJ, 2019 WL 1953399, at *4, n.3 (D. Colo. May 2, 2019) (responsive pleading is not due until after ruling on partial motion to dismiss); 2 Moore's Federal Practice - Civil § 12.12 (2025) ("Serving any motion, even one that addresses only a few of the counts or claims in a pleading, is sufficient to postpone the time to answer the entire pleading.").

Operating Escrow Fund with interest, even though the escrow had a negative balance, and he alleges an itemized list of allowable escrow fund expenses is impermissibly non-specific. And finally, he claims that as an independent contractor leasing his truck to SOAR and providing services to SOAR, he is entitled to the protections owed to consumers under the UCSPA, in contravention of the entire statutory scheme. Simply put, and as set forth in further detail below, Counts I and II of Plaintiff's Amended Complaint continue to fail to state cognizable claims, and should be dismissed with prejudice.

<u>**RELEVANT FACTS**</u>

**I.    An ICOA Governs Plaintiff's Relationship With SOAR.**

**A.    Plaintiff Provides Independent Contractor Services to SOAR.**

SOAR is a motor carrier and broker in interstate trucking that relies on the services of independent contractors for the motor carrier side of its business. Amended Complaint ("AC"), ¶ 22, 24–25, 27–28, 34. On December 14, 2023, Plaintiff signed an ICOA to become an independent contractor for SOAR.[2] *See* Exhibit A ("ICOA") to Declaration of Brayden Peroceschi ("Peroceschi Decl."), p. 14; *see also* AC, ¶ 34.[3] Plaintiff leased his truck and provided hauling services to SOAR from December 2023 through August 2024. AC, ¶¶ 6, 22–24.

---

[2] As part of the ICOA, Plaintiff also signed the ICOA Receipt for Possession of Equipment, ICOA Appendixes A–C, and ICOA Deduction Sheet, for a total of six signed documents. *See* ICOA, p. 14, PDF p. 15, A-9, B-1, C-1, PDF p. 30. Also included with the ICOA were the ICOA Fuel Surcharge Schedule to Appendix A and ICOA Appendix D. *Id.* at PDF p. 29, D-1.

[3] By frequently referencing the allegedly defective ICOA, and centering his Amended Complaint on the ICOA's purported defects, Plaintiff clearly incorporates the ICOA into his Amended Complaint. *See* Law and Argument section, *infra*. Plaintiff's Amended Complaint references the ICOA either by name or other labels in at least twenty different paragraphs. *See* AC, ¶¶ 7–8, 26, 29, 31, 33, 35, 43, 49–51, 61–62, 76, 85, 133, 136, 145, 158, 164. Therefore, the Court should consider the ICOA in evaluating Defendant's Motion to Dismiss.

Pursuant to TIL Regulations, the ICOA outlined the terms for Plaintiff's services to SOAR. *Id.* at ¶¶ 29–35. Plaintiff, the lessor, agreed "to provide [SOAR] the use of [Plaintiff's truck] and all labor, including driver(s), necessary to operate the [truck] and to perform all of the services contemplated by this Agreement." *See* ICOA, p. 1; 49 C.F.R. § 376.2(f). SOAR, the lessee, agreed to compensate Plaintiff for leasing his truck and providing his services. *Id.* at pp. 1–2; § 376.2(g). In providing these services to SOAR, Plaintiff was "not required to purchase or rent any products, equipment, or services from [SOAR] as a condition of entering into [the ICOA]." ICOA, p. 11.

Plaintiff was "not obligated to personally perform any of the services contemplated by [the ICOA]." *Id.* at p. 5. While Plaintiff could "elect[] to personally perform any aspect of [the ICOA]," he was "free, at any time during the term of [the ICOA], to hire substitute or additional drivers who meet applicable Driver Qualification Standards." *Id.* at pp. 1, 5. The ICOA was "between two independent businesses that [were] separately owned and operated." *Id.* at p. 10.

### B.    Plaintiff is Responsible for His Own Overhead Expenses.

Plaintiff "agreed to be responsible for the operating expenses incurred in connection with [Plaintiff's] business operations." *Id.* at p. 13; *see also id.* at p. 1 ("Contractor—as an independent contractor, not an employee—agrees that Contractor is responsible for paying all operating expenses."). While ultimately responsible for his operating expenses, Plaintiff had the choice to pay each cost directly (*i.e.*, calculate and pay fuel and mileage taxes, furnish his own equipment, obtain and pay for the necessary permits, etc.) or elect for SOAR to front the cost and later deduct the amount from Plaintiff's pay. *Id.* at pp. 2–8, A-1 – A-8.

Plaintiff chose the deduction option for each cost, as reflected in ICOA Appendix A. *Id.* at A-1 – A-8. That election is also reflected in the ICOA Deduction Sheet, which provides a list of

each potential deduction, its method of calculation, and whether Plaintiff elected the deduction. *See id.* at PDF p. 30. Among the other deductions, the Deduction Sheet stated that Plaintiff's physical damage insurance would be $81.73. *Id.* Plaintiff signed the Deduction Sheet when he signed the rest of the ICOA documents on December 14, 2023. *Id.*

### C.    The ICOA Expressly Explains Plaintiff's Compensation.

Under the ICOA, Plaintiff's compensation included both base compensation and a fuel surcharge. *See id.* at pp. 1, A-1. Plaintiff's base compensation was based on the number of miles driven, using different rates depending on whether they were "loaded" miles (*i.e.*, hauling freight) or "unloaded" miles (*i.e.*, not hauling). *See id.* at p. A-1. As stated in the ICOA, "Carrier shall pay Contractor $1.40 per **loaded** mile for all **loaded** (practical) miles," and "$0.50 per **unloaded** (deadhead) mile for all **unloaded** (deadhead) (practical) miles[.]" *Id.* (emphasis in original). Fuel surcharge compensation, meanwhile, was only based on "loaded" miles: "Carrier shall pay Contractor fuel-related compensation on **loaded** (practical) miles[.]" *Id.* (emphasis in original). The ICOA further states:

> Carrier shall pay Contractor fuel-related compensation on loaded (practical) miles (zip code to zip code) operated under and pursuant to Carrier dispatch (as specifically directed or authorized by Carrier) pursuant to this Agreement (each, a "Loaded Mile") according to the following formula (the "Fuel Compensation Formula"): . . . Payment to Contractor per Loaded Mile = [(Weekly DOE average price/gallon) - $1.25] / 7

*Id.* at PDF p. 26 (emphasis in original).

### D.    The ICOA Allows SOAR to Change Deductions by Negative Consent.

Paragraph 5.3 of the ICOA outlines the process for changing deduction amounts:

> Carrier will notify Contractor in writing of a change to the amount of any item listed or referenced in the Deductions Table. Contractor will not be subject to that change until 7 days after the notice— or, if sooner, the time the third-party vendor has

allowed—unless Contractor signs an addendum consenting to the change, in which case the change described in the addendum will go into effect immediately upon signing. **Otherwise, Contractor's failure to object to the change constitutes Contractor's consent to the change effective as of the date specified in the notice.** If Contractor notifies Carrier of Contractor's objection within that period and Contractor and Carrier are unable to resolve the matter to their mutual satisfaction, either party will have the right to terminate this Agreement immediately upon the change becoming effective.

*See id.* at p. 2 (emphasis in original).

### E.    The ICOA Expressly Addresses Escrow Fund Procedures.

TIL Regulations include provisions governing the use of escrow accounts. In particular, TIL Regulations require a lease to "specify" various terms of the escrow arrangement, such as the "amount of any escrow fund or performance bond required to be paid by the lessor"; the "specific items to which the escrow fund can be applied"; that the "the carrier shall pay interest on the escrow fund on at least a quarterly basis"; the "conditions the lessor must fulfill in order to have the escrow fund returned," including that the escrow fund must "be returned [no] later than 45 days from the date of termination"; and related details. 49 C.F.R. § 376.12(k).

The ICOA provides the requisite details about the escrow fund set up by the ICOA, called the "Operating Escrow Fund." *See* ICOA, pp. 4–5. Those details include the following, among others:

- Escrow payments required by SOAR: $0.08 "a mile." *Id.* at PDF p. 30 (capitalization modified); *see also id.* at p. A-5 ("$.08 cents per mile").

- Items to which the escrow fund can be applied: "The items to which the Operating Escrow Fund will apply are all charge-back items and deductions set forth in the Deductions Table." *Id.* at p. 4; *see also id.* at PDF p. 30 (providing itemized list and cost of each elected deduction).

- Escrow interest: "Carrier will pay interest on the balance in the Operating Escrow Fund on at least a quarterly basis[.]" *Id.* at p. 5.

- <u>Returning escrow funds</u>: "In no event will the balance in the Operating Escrow Fund (less any final deductions) be returned to Contractor later than 45 days from the date of termination of this Agreement." *Id*.

**F.    The ICOA Describes Fuel Tax Payment Procedures.**

Like with other overhead costs, Plaintiff elected for SOAR to pay Plaintiff's fuel and mileage taxes upfront and then recover the cost later from Plaintiff's compensation. *Id.* at pp. A-1 – A-6. Rather than using a separate fuel tax-specific escrow to pay for Plaintiff's fuel taxes, the ICOA indicates that SOAR recovers the cost through a non-refundable flat charge of "$0.0125 cents <u>per mile</u>, comprising the permit fees and Carrier's tax reporting admin. fee." *See id.* at p. A-4 (emphasis added); *see also id.* at PDF p. 30 (stating in the ICOA Deduction Sheet that the fuel and mileage tax would be based on $0.0125 "a mile") (capitalization modified).

**II.    Plaintiff Claims SOAR Violated TIL Regulations and the UCSPA on the Grounds that the ICOA is Defective.**

**A.    Plaintiff Alleges SOAR Violated TIL Regulations by Failing to Include Certain Required Information in the ICOA.**

According to Plaintiff's Amended Complaint, SOAR violated TIL Regulations "by failing to disclose required information in its written lease agreements, by taking undisclosed deductions from drivers' compensation, and by unlawfully retaining drivers' escrow funds." AC, ¶ 164.

One category of alleged undisclosed "required information" was "how various chargeback amounts would be calculated." *Id.* at ¶ 35. Specifically, Plaintiff alleges SOAR "failed to disclose in its written lease agreement that certain chargebacks to drivers will be calculated based on both loaded and empty miles, at the same rate, even though drivers receive a much lower rate of pay for empty miles than loaded miles." *Id.* at ¶ 37. Plaintiff claims his actual damages for this violation

"consist[] of the chargeback rates ($0.08 for the 'Operating Escrow' and $0.0125 for fuel taxes) multiplied by his dispatched empty miles[.]" *Id.* at ¶ 38.

The second alleged category includes pay deductions that were "not disclosed in a written lease agreement 'signed by these parties or by their authorized representatives.'" *Id.* at ¶ 40 (quoting 49 C.F.R. § 376.12(a)). Specifically, Plaintiff claims SOAR amended the ICOA through a negative consent process, which Plaintiff alleges violates the TIL Regulations because the "purported amendment . . . was not signed by [Plaintiff.]" *Id.* at ¶ 43.

The third category of alleged undisclosed "required information" is that SOAR did not provide "notice that his physical damage insurance chargeback would be $81.73 per week after he had signed the ICOA." *Id.* at ¶ 51 (emphasis omitted).

Finally, Plaintiff alleges SOAR violated the TIL Regulations regarding escrow funds in three specific ways. *Id.* at ¶¶ 57–64. First, that SOAR "does not return amounts deducted for the escrow fund to drivers after termination." *Id.* at ¶ 59. Plaintiff specifically alleges SOAR did not return his $1,016.65 in "fuel tax escrow" money after his ICOA terminated. *Id.* at ¶ 68. Second, that the escrow funds "do not properly accrue interest." *Id.* at ¶ 59. Third, that while the ICOA states the Operating Escrow fund may be applied to "all charge-back items and Deductions set forth in the Deductions Table" to "ensur[e] . . . compliance with [the ICOA]," the "fail[ure] to provide any greater specificity about the purpose of the escrow fund . . . impermissibly authorizes [SOAR] to treat the escrow as a slush fund." *Id.* at ¶¶ 61–62. Plaintiff alleges, as examples, instances where SOAR withdrew from Plaintiff's escrow fund to pay for insurance, taxes, "and other recurring deductions." *Id.* at ¶¶ 63–67.

**B.    Plaintiff Claims SOAR Violated the UCSPA by Failing to Disclose Certain Information in the ICOA.**

Plaintiff alleges SOAR violated the UCSPA by engaging in deceptive acts or practices under Utah Code § 13-11-4(2)(r)[4] and unconscionable acts or practices under Utah Code § 13-11-5. *See id.* at ¶¶ 72, 87. He has two claims.

First, Plaintiff alleges SOAR was deceptive by deducting the "trailing equipment rental fee" from Plaintiff without "express authorization," in violation of Utah Admin. Code R152-11-5(B)(3).[5] *See id.* at ¶¶ 74–76. Plaintiff claims the "trailing equipment rental fee" deduction "is a consumer transaction within the meaning of the [UCSPA], because it is a sale of goods, services, or other property for purposes that relate to a business opportunity[.]" *Id.* at ¶ 74.

Second, Plaintiff claims the compensation SOAR provided Plaintiff for his services was both unconscionable and deceptive because he was not "provided with the information necessary to understand [SOAR's] payment scheme until [he] signed the ICOA and started driving for [SOAR]." *Id.* at ¶¶ 78, 85, 87. Specifically, he claims that before he signed the ICOA:

- SOAR allegedly indicated he would receive compensation of "$1.40 per loaded mile and $0.50 per dispatched empty mile." *Id.* at ¶ 79.

- SOAR allegedly indicated he would receive a fuel surcharge, but did not notify him that "the fuel surcharge will be calculated based only on loaded miles, not dispatched empty miles[.]" *Id.* at ¶ 80 (emphasis omitted).

- SOAR allegedly stated there would be "maintenance escrow deductions" of "$0.08 per mile" and "fuel tax escrow deductions" at "$0.0125 per mile," but SOAR did

---

[4] The UCSPA has been amended since Plaintiff commenced this action against SOAR. All references to the UCSPA in this Motion refer to the version of the Act that was in effect in March 2025.

[5] Under this rule, it is a "deceptive act or practice in connection with a consumer transaction . . . for a supplier to . . . [f]ail to obtain [a] consumer's express authorization for any . . . amendments to the parties' contract." Utah Admin. Code R152-11-5(B)(3).

not "specify that these cents-per-mile deductions will include dispatched empty miles[.]" *Id.* at ¶¶ 82–83.

Plaintiff claims the cumulative effect of these payment and deduction practices was to make it unclear that "empty miles will be significantly more expensive for drivers relative to loaded miles." *Id.* at ¶¶ 84–87. While Plaintiff alleges this was deceptive under Utah Admin. Code R152-11-5(B)(1),[6] he does not provide a regulatory basis for claiming it was unconscionable.

## LAW AND ARGUMENT

**I.    To Survive a Motion to Dismiss, Plaintiff's Claims Must Be Plausible, Both Under the Amended Complaint and Any Incorporated Documents.**

To survive a Rule 12(b)(6) motion to dismiss, a Complaint must contain allegations of fact that, if accepted as true, "state a claim to relief that is plausible on its face." *E.g.*, *Mundt v. Gadziala*, No. 24-1041, 2024 U.S. App. LEXIS 31539, at *10 (10th Cir. Dec. 12, 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (cleaned up). "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104–05 (10th Cir. 2017) (cleaned up). While it does not require a plaintiff to establish probability, the "plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663–64. Legal conclusions are not entitled to the assumption of truth. *Id.* at 678.

---

[6] Pursuant to Utah Admin. Code R152-11-5(B)(1), it is a "deceptive act or practice in connection with a consumer transaction . . . for a supplier to . . . [i]ntentionally understate or misstate the estimated cost of the services to be provided[.]"

While courts generally only consider the face of the complaint when deciding a Rule 12(b)(6) motion, "courts may also consider documents that a plaintiff (1) attaches to [his] complaint; (2) incorporates by reference in [his] complaint; or (3) refers to in [his] complaint and that are central to [his] complaint and indisputably authentic." *E.g.*, *Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024). "Factual allegations that contradict a properly considered document are not well-pleaded facts that the court must accept as true." *Farrell-Cooper Mining Co. v. United States DOI*, 728 F.3d 1229, 1237 n.6 (10th Cir. 2013) (quoting *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1385 (10th Cir. 1997)); *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023) (a court "need not accept . . . allegations plainly contradicted by properly considered documents or exhibits").

 "[I]f there is a conflict between the allegations in the complaint and the content of the attached exhibit, the exhibit controls." *Brokers' Choice*, 861 F.3d at 1105 (quoting *Droppleman v. Horsley*, 372 F.2d 249, 250 (10th Cir. 1967)) (cleaned up); *see also Mundt*, 2024 U.S. App. LEXIS 31539, at *13 (quoting the court in *Brokers*); *Bell v. Magna Times, LLC*, No. 2:18CV497DAK, 2019 U.S. Dist. LEXIS 72750, at *9 (D. Utah Apr. 29, 2019) (same).

This rule generally applies to documents that "qualif[y] as a written instrument, which is a legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate." *Mundt*, 2024 U.S. App. LEXIS 31539, at *13 (cleaned up; emphasis added); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

It also applies "in situations where a party may misconstrue or attempt to characterize terms in a document when making allegations regarding the document in its Complaint." *Owners Ins.*

*Co. v. Dockstader*, No. 2:18CV173DAK, 2018 U.S. Dist. LEXIS 147286, at *7 (D. Utah Aug. 28, 2018); *see also Clinton*, 63 F.4th at 1292 ("[W]hen the complaint describes the contents of a document, a court must reject an allegation that misstates the contents.") (Hartz, J., dissenting); *Joshua Colby Council v. Salt Lake City Police Dep't*, No. 2:24-cv-174 DBB DBP, 2025 U.S. Dist. LEXIS 26599, at *6–*9. (D. Utah Jan. 22, 2025) (where a plaintiff had claimed he was "kidnapped by rogue actors" and not "placed under arrest," the court considered a County Booking Packet in granting a defendant's motion to dismiss).

In *Hall v. Associated International Insurance Co.*, for example, the plaintiff asserted claims of fraud and promissory estoppel against a bank, based on insurance and mortgage documents. 494 F. App'x 902, 904 (10th Cir. 2012) (unpublished). Noting that the documents were central to the plaintiff's claims, the lower court found the documents "directly contradicted" the plaintiff's claims. *Id.* at 904–06. As a result of those contradictions (and other issues in the complaint), the lower court granted the defendant's motion to dismiss. *Id.* The Tenth Circuit affirmed. *Id.*

Similarly, in *Matney v. Barrick Gold of North America*, the plaintiffs claimed defendants breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 because, *inter alia*, the plan administrators charged excessively high fees. 80 F.4th 1136, 1142 (10th Cir. 2023). In their motion to dismiss, the defendants argued that the plaintiffs had misstated the plan documents' provisions. *Id.* The plaintiffs opposed, arguing it was improper to rely on the plan documents in a motion to dismiss. *Id.* The lower court granted the defendants' motion, and the Tenth Circuit affirmed. *Id.* at 1142–60. The Tenth Circuit found "[t]he district court did not err in refusing to accept as true factual allegations contradicted by these properly considered

documents." *Id.* at 1160. Indeed, the plaintiffs could not "survive a motion to dismiss merely by pointing to allegations refuted by the documents on which those allegations are based." *Id.*

## II.    Plaintiff's Amended Complaint Incorporates the ICOA.

The Court should consider the ICOA in deciding this Motion. The ICOA is central to Counts I and II of Plaintiff's Amended Complaint. Throughout the Amended Complaint, Plaintiff claimed that the ICOA – and SOAR's alleged actions under the ICOA – violated the TIL Regulations and the UCSPA. Plaintiff referred to the ICOA either by name or other labels in at least twenty different paragraphs. *See* AC, ¶¶ 7–8, 26, 29, 31, 33, 35, 43, 49–51, 61–62, 76, 85, 133, 136, 145, 158, 164. Rule 12(b)(6) does not require a court to ignore the document that is the central focus of a plaintiff's claims. *See*, *e.g.*, *Brokers' Choice*, 861 F.3d at 1105; *Matney*, 80 F.4th at 1142; *Hall*, 494 F. App'x at 904. Moreover, there can be no dispute regarding the authenticity of the ICOA.[7] Peroceschi Decl., ¶¶ 14, 19. Given that Plaintiff referenced the ICOA numerous times in his Amended Complaint, the ICOA is central to his Amended Complaint, and the ICOA is indisputably authentic, the Court should consider the ICOA in deciding this Motion.

## III.    Plaintiff Fails to Assert a Facially Plausible Claim Under the TIL Regulations Because His Allegations Directly Conflict With the ICOA.

The ICOA's written terms directly contradict Plaintiff's allegations regarding the ICOA, and the Tenth Circuit has made it clear that, in such a situation, the content of the ICOA controls. *See*, *e.g.*, *Brokers' Choice*, 861 F.3d at 1105; *Matney*, 80 F.4th at 1142; *Hall*, 494 F. App'x at 904. As a result, Plaintiff fails to plead facts under Count I that would allow the Court to draw a

---

[7] The ICOA submitted with this Motion is an indisputably authentic copy, as one of the signatories – Brayden Peroceschi – has submitted a declaration authenticating the document. *See Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, 825 F. Supp. 2d 1072, 1076 (D. Colo. 2011).

reasonable inference that SOAR is liable for the alleged conduct, militating in favor of dismissing Count I with prejudice.

### A. The ICOA States that the Operating Escrow and Fuel Tax Charges Would Be Based on Every Mile Driven.

Plaintiff claims the ICOA did not disclose that the Operating Escrow and fuel tax charges would include unloaded miles. *See* AC, ¶ 37. Yet, the ICOA provides that Plaintiff's escrow deduction would be $0.08 "a mile." ICOA, PDF p. 30 (capitalization modified); *see also id.* at p. A-5 ("$.08 cents per mile"). And the ICOA similarly provides that Plaintiff's fuel and mileage tax deduction would be "a flat charge of $0.0125 cents per mile." *Id.* at p. A-4 (emphasis added); *see also id.* at PDF p. 30 (the fuel and mileage tax would be based on $0.0125 "a mile") (capitalization modified). The ICOA was clear that these two deductions would be based on every mile, irrespective of whether they were loaded or unloaded miles. Given that the ICOA contradicts this allegation, and the ICOA controls, this allegation fails to state a claim. *See*, *e.g.*, *Brokers' Choice*, 861 F.3d at 1105; *Matney*, 80 F.4th at 1142; *Hall*, 494 F. App'x at 904.

### B. The ICOA Allows SOAR to Change a Deduction Through Negative Consent.

While Plaintiff alleges that SOAR improperly changed a deduction through a negative consent process, the ICOA permits this exact process. *See* AC, ¶¶ 40–42, 75–77; ICOA, pp. 2–3. The ICOA allows SOAR to "notify" Plaintiff of a change to a deduction, and then if there is no objection, that "failure . . . constitutes [Plaintiff's] consent to the change effective as of the date specified in the notice[.]" *See* ICOA, pp. 2–3. Nor does this process violate the provision in the TIL Regulations Plaintiff cites about the ICOA being "signed by [the] parties [.]" *See* 49 C.F.R. § 376.12(a); AC, ¶ 40. The ICOA *was* signed by the parties. *See*, *e.g.*, ICOA, p. 14. The ICOA controls over Plaintiff's conflicting allegations and, therefore, Plaintiff's conflicting allegations

about the amendment process fail to state a claim. *See*, *e.g.*, *Brokers' Choice*, 861 F.3d at 1105; *Matney*, 80 F.4th at 1142; *Hall,* 494 F. App'x at 904.

### C.     The ICOA Shows Plaintiff's Physical Damage Insurance Deduction Amount.

Plaintiff claims SOAR did not provide "notice that his physical damage insurance chargeback would be $81.73 per week after he had signed the ICOA." AC, ¶ 51. Yet, the ICOA Deduction Sheet explicitly states that Plaintiff's physical damage insurance deduction would be $81.73. *See* ICOA, PDF p. 30. He signed the Deduction Sheet on December 14, 2023, along with the rest of the ICOA documents. *Id.* And even if SOAR had not previously provided the physical damage insurance deduction amount, there still would be no violation of the TIL Regulations. Indeed, nowhere in the TIL Regulations is there a requirement that a carrier state the exact dollar amount of an independent contractor's insurance deduction before the independent contractor signs an ICOA. *See* 49 C.F.R. Part 376. Given the ICOA directly contradicts Plaintiff's allegations about the physical damage insurance deduction, and the ICOA controls, Plaintiff's allegations about the physical damage insurance deduction fail to state a claim. *See*, *e.g.*, *Brokers' Choice*, 861 F.3d at 1105; *Matney*, 80 F.4th at 1142; *Hall,* 494 F. App'x at 904.

### D.     The ICOA Complies with the TIL Regulations Regarding Escrow Funds.

Plaintiff asserts three allegations regarding the escrow, all of which fail to state a claim. First, Plaintiff alleges SOAR does not return escrow funds to independent contractors post-termination. AC, ¶ 59. The ICOA, however, states the opposite: "In no event will the balance in the Operating Escrow Fund (less any final deductions) be returned to Contractor later than 45 days from the date of termination of this Agreement." *See* ICOA, p. 5. And while Plaintiff alleges that SOAR did not return his $1,016.65 in "fuel tax escrow" money after termination, the ICOA does

not create a "fuel tax escrow." Rather, the ICOA states that SOAR "will deduct or otherwise recover a flat charge of $0.0125 cents per mile[.]" *Id.* at A-4. This was not an escrow, but rather, a non-refundable charge to cover Plaintiff's fuel taxes.

Second, Plaintiff claims SOAR did not allow escrow funds to "properly accrue interest." *See* AC, at ¶ 59. The ICOA contradicts this claim. As the ICOA outlines, "[SOAR] will pay interest on the balance in the Operating Escrow Fund on at least a quarterly basis." ICOA, p. 5. Plaintiff, moreover, alleges he had a <u>negative</u> balance in December 21–27, 2023; May 16–22, 2024; July 4– 10, 2024; and August 22–28, 2024. AC, ¶¶ 128–130, 132. He similarly alleges having a negative escrow balance in his settlements from January 31, 2024; April 10, 2024; April 17, 2024; and July 31, 2024. *Id.* at ¶¶ 64–67. The ICOA does not state, and Plaintiff does not allege, that Plaintiff would be entitled to interest on his own debt to SOAR.

Third, Plaintiff alleges the ICOA failed to provide sufficient "specificity" about the "purpose" of the Operating Escrow, turning it into an "impermissib[le] . . . slush fund." *Id.* at ¶¶ 61–62. Yet, Plaintiff acknowledges the ICOA says "[t]he items to which the escrow fund may be applied are 'all charge-back items and Deductions set forth in the Deductions Table.'" *Id.* at ¶ 61. The referenced ICOA Deductions Sheet contains an itemized list of all deductions. *See* ICOA, PDF p. 30. In terms of specificity for the items that escrow funds may be applied against, the TIL Regulations do not require more than an itemized list. The relevant requirement is that the ICOA states the "specific items to which the escrow fund can be applied." 49 C.F.R. § 376.12(k). The ICOA Deductions Sheet fulfills that requirement. *See* ICOA, PDF p. 30. Given all three of Plaintiff's escrow allegations conflict with the ICOA, these allegations fail to state a claim. *See*, *e.g.*, *Brokers' Choice*, 861 F.3d at 1105; *Matney*, 80 F.4th at 1142; *Hall,* 494 F. App'x at 904.

In sum, each allegation that Plaintiff asserts to support his claim under the TIL Regulations directly conflicts with the ICOA's plain language. Plaintiff's claim cannot survive "merely by pointing to allegations refuted by the documents on which those allegations are based." *Matney*, 80 F.4th at 1160. Therefore, the Court should dismiss Count I of Plaintiff's Amended Complaint with prejudice.

## IV.    Plaintiff Fails to State a UCSPA Claim.

In his Amended Complaint, Plaintiff alleges SOAR violated the UCSPA in two ways: (1) deceptive acts or practices, and (2) unconscionable acts or practices. AC, ¶¶ 72–87. Plaintiff alleges two instances of deception and one instance of unconscionability. *Id*. But the ICOA flatly contradicts every allegation supporting each purported UCSPA violation and, in such a situation, the ICOA controls. *See*, *e.g.*, *Brokers' Choice*, 861 F.3d at 1105; *Matney*, 80 F.4th at 1142; *Hall*, 494 F. App'x at 904. Therefore, Plaintiff's UCSPA claim should be dismissed with prejudice.

### A.    SOAR is Not a Supplier to Plaintiff.

As a threshold matter, Plaintiff's UCSPA claims fail because the UCSPA does not apply to the relationship between Plaintiff and SOAR. The UCSPA only permits consumers to bring an action against suppliers, but Plaintiff is not a consumer and SOAR is not Plaintiff's supplier.

Plaintiff's Amended Complaint and the ICOA confirm SOAR was not a supplier to Plaintiff. Under the UCSPA, a "supplier" is a "seller, lessor, assignor, offeror, broker, or other person who regularly solicits, engages in, or enforces consumer transactions, whether or not he deals directly with the consumer." Utah Code § 13-11-3(6). The statute goes on to define "consumer transaction" as follows:

[A] sale, lease, assignment, award by chance, or other written or oral transfer or disposition of goods, services, or other property, both tangible and intangible (except securities and insurance) <u>to, or apparently to, a person</u> for:

    (i) primarily personal, family, or household purposes; or

    (ii) purposes that relate to a business opportunity that <u>requires</u>:

        (A) expenditure of money or property by the person described in Subsection (2)(a); and

        (B) the person described in Subsection (2)(a) to perform personal services on a continuing basis and in which the person described in Subsection (2)(a) has not been previously engaged.

§ 13-11-3(2) (emphasis added).

SOAR was not a "seller, lessor, assignor, offeror, [or] broker" to Plaintiff. SOAR was the lessee. *See* ICOA, p. 1; 49 C.F.R. § 376.2(f). Plaintiff did not need to "purchase or rent any products, equipment, or services from [SOAR] as a condition of entering into [the ICOA]." *See* ICOA, p. 11. Nor did SOAR conduct consumer transactions where Plaintiff was a consumer. Plaintiff cannot plausibly allege SOAR sold, leased, or transferred any goods, services, or property for "primarily personal, family, or household purposes" or because of a business opportunity that "requires" spending money "and" performing "personal services." The ICOA is clearly a commercial contract, and the ICOA explicitly states Plaintiff was "not obligated to <u>personally</u> perform any of the services contemplated by [the ICOA]." *Id.* at p. 5 (emphasis added). Rather, Plaintiff – not SOAR – was the supplier in the Parties' relationship. It was Plaintiff, as the lessor, who leased his truck to SOAR and provided hauling services for SOAR. *See id.* at p. 1; 49 C.F.R. § 376.2(f); AC, ¶¶ 6, 22–24, 33–35.

This is fatal to Plaintiff's UCSPA claims. The UCSPA only governs acts or practices committed "by a supplier." *See* Utah Code § 13-11-2(2) (the intent of the UCSPA is to "protect

consumers from suppliers"); § 13-11-4(1) ("A deceptive act or practice by a supplier . . ."); § 13-11-5(1) ("An unconscionable act or practice by a supplier . . ."). It only gives consumers, not suppliers, a right to a cause of action. *See* § 13-11-19(1) ("a consumer may bring an action"); *Icon Health & Fitness, Inc. v. ConsumerAffairs.com*, No. 1:16-cv-00168-DBP, 2018 U.S. Dist. LEXIS 37517, at *14 (D. Utah Mar. 6, 2018) ("the UCSPA clearly sets forth a cause of action for a consumer, but affords no such relief for a supplier, particularly against another supplier"). Because SOAR was not a supplier to Plaintiff, the UCSPA does not govern SOAR's alleged acts or practices with respect to Plaintiff. As a result, Plaintiff has failed to state a claim under the UCSPA.

Given the UCSPA does not apply, Plaintiff's UCSPA claims necessarily fail and no further analysis is necessary. Nevertheless, there are additional, independent grounds for dismissing Count II, as discussed below.

### B. The Trailing Equipment Rental Fee Did Not Involve a Service by SOAR.

Plaintiff's first UCSPA claim is that SOAR engaged in a deceptive act or practice by deducting the "trailing equipment rental fee" from Plaintiff without "express authorization," in violation of Utah Admin. Code R152-11-5(B)(3). *See* AC, ¶¶ 74–76. Under that rule, it is considered a deceptive act or practice for a supplier to, "in connection with a consumer transaction involving . . . <u>services</u>," fail to "obtain [a] consumer's express authorization for any . . . amendments to the parties' contract." Utah Admin. Code R152-11-5(B)(3) (emphasis added). The regulations further define "service" as the "performance of labor or any act for the benefit of another." Utah Admin. Code R152-11-1.

This claim also fails because the trailing equipment rental fee was not for any <u>service</u> provided by SOAR. While Plaintiff alleges it was a "sale of goods, services, or other property,"

that is inconsistent with the ICOA. *See* AC, ¶ 74. Deductions were not compensation to SOAR from any sales to Plaintiff; they were the mechanism by which SOAR recovered the overhead expenses it had fronted to Plaintiff. *See* ICOA, pp. 2–8, A-1 – A-8. Plaintiff had agreed SOAR would recover the expenses SOAR fronted to Plaintiff, and had agreed to a process whereby SOAR could adjust its deductions based on changes to Plaintiff's costs. *Id.* That is the process SOAR followed. *See id.*; AC, ¶¶ 41–42. The rule Plaintiff cites, therefore, is entirely inapplicable. As this allegation is contradicted by the ICOA, and the ICOA controls, this allegation fails to state a claim. *See*, *e.g.*, *Brokers' Choice*, 861 F.3d at 1105; *Matney*, 80 F.4th at 1142; *Hall,* 494 F. App'x at 904.

### C. The ICOA Explicitly Discloses that the Fuel Surcharge Would Only Be Calculated Based on Loaded Miles.

Plaintiff's second UCSPA claim hinges on allegations that SOAR did not notify Plaintiff that (a) the fuel surcharge would be based only on loaded miles and (b) the Operating Escrow deductions and fuel tax charges would be based on loaded and unloaded miles. AC, ¶¶ 79–87. Plaintiff alleges this was deceptive under Utah Admin. Code R152-11-5(B)(1) but does not allege how. *Id.* at ¶ 87. He also fails to specify a regulatory basis for unconscionability. *See id.*

Like with Plaintiff's first UCSPA claim, this claim fails because it was not for any service provided by SOAR. The purpose of the fuel surcharge was to compensate Plaintiff for his services to SOAR, not vice versa. *See* ICOA, pp. 1–2, A-1. And the purpose of the Operating Escrow deductions and fuel tax charges were to recover overhead expenses SOAR fronted to Plaintiff. *Id.* at pp. 2–8, A-1 – A-8.

Moreover, both allegations directly conflict with the ICOA. The ICOA explicitly states that the surcharge would be based on loaded miles, even bolding and underlining the word "loaded" in the disclosure: "[SOAR] shall pay [Plaintiff] fuel-related compensation on **_loaded_** (practical)

miles[.]" *See id.* at p. A-1 (emphasis in original). Nor was this stated just once in the ICOA. *See id.* at PDF p. 26. Similarly, the ICOA provides that Plaintiff's escrow deduction would be $0.08 "a mile." *Id.* at PDF p. 30 (capitalization modified); *see also id.* at p. A-5 ("$.08 cents per mile"). It also indicates Plaintiff's fuel tax deduction would be "a flat charge of $0.0125 cents <u>per mile</u>." *Id.* at p. A-4 (emphasis added); *see also id.* at PDF p. 30 (the fuel and mileage tax would be based on $0.0125 "a mile") (capitalization modified). The ICOA was clear that these two deductions would be based on every mile, irrespective of whether they were loaded or unloaded miles. Plaintiff's conflicting allegations do not, therefore, state a claim under the UCSPA. *See*, *e.g.*, *Brokers' Choice*, 861 F.3d at 1105; *Matney*, 80 F.4th at 1142; *Hall,* 494 F. App'x at 904.

As the UCSPA does not apply because SOAR was not a supplier to Plaintiff, and each of Plaintiff's allegations under the UCSPA are inconsistent with the plain language of the ICOA, the UCSPA claim is facially implausible and should be dismissed with prejudice. *See*, *e.g.*, *Brokers' Choice*, 861 F.3d at 1105; *Matney*, 80 F.4th at 1142; *Hall,* 494 F. App'x at 904.

## V.    Plaintiff's UCSPA Claim Also Fails Because Plaintiff Did Not Plead Facts Supporting a Class Action Damages Claim.

### A.    The UCSPA Does Not Authorize Recovery of Damages in a Class Action Unless Certain Criteria Are Met.

Under the UCSPA, "[a] consumer who suffers loss as a result of a violation of this chapter may recover, <u>but not in a class action</u>, actual damages or $2,000, whichever is greater, plus court costs." Utah Code § 13-11-19(2) (emphasis added). However, a consumer "may bring a class action for the actual damages caused by an act or practice" under any of the following circumstances:

(1) the act or practice is "specified as violating this chapter by a rule adopted by the enforcing authority under Subsection 13-11-8(2) before the consumer transactions on which the action is based[;]"

(2) the act or practice is "declared to violate Section 13-11-4 or 13-11-5 by a final judgment of the appropriate court or courts of general jurisdiction and appellate courts of this state that was either officially reported or made available for public dissemination under Subsection 13-11-7(1)(c) by the enforcing authority 10 days before the consumer transactions on which the action is based[;] or"

(3) the act or practice is "with respect to a supplier who agreed to it, was prohibited specifically by the terms of a consent judgment which became final before the consumer transactions on which the action is based."

§ 13-11-19(4)(a). "Unless one of the three situations is present, a consumer is not permitted to pursue a class action under the UCSPA for actual or statutory damages." *Matchett v. BSI Fin. Servs.*, No. 2:21-cv-211-DAK-CMR, 2021 U.S. Dist. LEXIS 149228, at *5 (D. Utah Aug. 6, 2021) (citing *Johnson v. Blendtec, Inc.*, 500 F. Supp. 3d 1271 (D. Utah 2020)).[8]

## B. Plaintiff Fails to Allege Facts Supporting that Any of the Exceptions Under Utah Code § 13-11-19(4)(a) Apply.

Plaintiff's Amended Complaint fails to plausibly plead any of the situations under § 13-11-19(4)(a). The only rules he cites are Utah Admin. Code R152-11-5(B)(1) and R152-11-5(B)(3). Given – as discussed above – Plaintiff was not a consumer, and SOAR was not a supplier, neither rule applies. Also, neither rule applies because SOAR was not providing any services to Plaintiff in relation to the alleged transaction, as discussed above. As a result, Plaintiff's Amended Complaint fails to allege sufficient facts to support a class action claim for damages under § 13-11-19(2) and § 13-11-19(4)(a) (the "UCSPA damages provisions").

---

[8] Damages are not the only remedy available under the UCSPA. A plaintiff "may bring a class action for declaratory judgment, an injunction, and appropriate ancillary relief." Utah Code § 13-11-19(3).

**C.      Dismissal of Damages Claim is Appropriate Because Plaintiff Fails to Allege the Substantive Requirements for Stating a UCSPA Class Claim for Damages.**

When a plaintiff fails to allege facts that satisfy the requirements of the UCSPA, deciding the issue at the motion to dismiss stage is appropriate. *See Fullmer v. A-1 Collection Agency*, LLC, No. 4:20-cv-00143-DN-PK, 2022 U.S. Dist. LEXIS 88090, at *12 (D. Utah May 16, 2022) ("Because Plaintiffs' Complaint fails to sufficiently allege the substantive requirements for stating a class claim for damages under UCSPA subsection (4)(a), there is no reason to delay consideration of the lack of damages"); *Matchett*, 2021 U.S. Dist. LEXIS 149228, at *8 (dismissed Plaintiff's class action claims for damages under the UCSPA because Plaintiff failed to plead "statutory authorization for her class claims"); *Callegari v. Blendtec, Inc.*, No. 2:18-cv-308-DB, 2018 U.S. Dist. LEXIS 190746, at *11 (D. Utah Nov. 6, 2018) (dismissing the plaintiff's class action claim for damages under the UCSPA due to the plaintiff's "failure to plead 'an act or practice specified as violating [the UCSPA] by a rule adopted by the enforcing authority.'").

Because Plaintiff did not plead facts sufficient to satisfy any of the exceptions under the UCSPA damages provisions, the Court should dismiss with prejudice Plaintiff's class action UCSPA claim for damages.

## **<u>CONCLUSION</u>**

For the reasons set forth above, Defendant Kelle's Transport Service, LLC d/b/a SOAR Transportation Group respectfully requests the Court grant its Motion and dismiss Counts I and II of Plaintiff's First Amended Class Action Complaint with prejudice.

DATED this 15th day of May, 2025.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.


*/s/ Jason N.W. Plowman*
Jason N.W. Plowman
Paul J. Hulbert
Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 15th day of May, 2025, I served the foregoing **DEFENDANT'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT** on the persons identified below as indicated:

Kass Harstad
BIRCH HALLAM HARSTAD & JOHNSON LLC
1516 W Hays Street
Boise, ID 83702
kass@idahojobjustice.com
*Attorneys for Plaintiff and Proposed Class Counsel*

☐ U.S. Mail – Postage Prepaid
☐ Hand Delivery
☑ Electronic Filing
☐ Email

Hillary Schwab (*Pro Hac Vice* forthcoming)
Rachel Smit (*Pro Hac Vice*)
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
hillary@fairworklaw.com
rachel@fairworklaw.com
*Attorneys for Plaintiff and Proposed Class Counsel*

☐ U.S. Mail – Postage Prepaid
☐ Hand Delivery
☑ Electronic Filing
☐ Email

*/s/ Jason N.W. Plowman*

89780156.v11-OGLETREE